UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Lineas Aereas Comerciales S.A. de C.V., a corporation organized under the laws of Mexico,<br><br>Plaintiff,<br><br>v.<br><br>Jet Support Services, Inc. a Delaware corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 17-CV-08666<br>)<br>)<br>)<br>)<br>) |

## JET SUPPORT SERVICES, INC.'S
## ANSWER TO COMPLAINT AND COUNTERCLAIM

Defendant, Jet Support Services, Inc., ("JSSI"), by its attorneys, Novack and Macey LLP as and for its Answer to Plaintiff Lineas Aereas Comerciales S.A. de C.V.'s ("LAC") Complaint, states as follows:

### THE PARTIES

1. LAC is a corporation organized under the laws of Mexico, with its principal place of business in Saltillo, Coahuila, Mexico. LAC is in the business of providing Air Taxi services for a dedicated group of companies in the mining industry.

**ANSWER:** JSSI lacks knowledge and information sufficient to form a belief as to the allegations of this paragraph.

2. JSSI is a Delaware corporation with its principal place of business in Chicago, Illinois. JSSI is an independent provider of aircraft maintenance programs.

**ANSWER:** JSSI admits the allegations of the first sentence of this paragraph, admits that it is an independent provider of programs that finance certain aircraft maintenance, and denies any remaining allegations of this paragraph.

## JURISDICTION AND VENUE

3. In their contract, described more fully below, and attached hereto as Exhibit 1, the parties agreed that any dispute arising out of or relating to the contract would be litigated exclusively in the federal or state courts in Illinois and each party consented to the exclusive jurisdiction and venue of any state or federal court located within Cook County.

**ANSWER:** JSSI admits that the parties agreed that all disputes shall be litigated in Cook County, Illinois. The contract is in writing and JSSI denies all allegations inconsistent with the terms thereof and denies any remaining allegations of this paragraph.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 in that the controversy is between a citizen of a State and a citizen of a foreign state, and the matter in controversy exceeds the sum of $75,000.

**ANSWER:** JSSI admits that this is a controversy between a citizen of a State and a citizen of a foreign state and the matter in controversy exceeds $75,000. The remaining allegations of this paragraph are legal conclusions to which no response is required.

5. In addition, this is an action, in part, for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 2201, and 2202.

**ANSWER:** JSSI admits that LAC purports to assert a claim for a declaratory judgment. The remaining allegations of this paragraph are legal conclusions to which no response in required.

## FACTUAL ALLEGATIONS

6. LAC owns a 1990 Learjet 31, Registration No. XA-UJQ ("Aircraft"). The Aircraft is a twin-engine, high speed business jet, manufactured by Learjet, a subsidiary of Bombardier Aerospace. The Aircraft is equipped with 2 Honeywell engines, model TFE731-2C-3B (the "Engines").

**ANSWER:** Based on information provided by LAC, JSSI admits the allegations of this paragraph.

7. LAC purchased the Aircraft in 2006. LAC originally enrolled the Aircraft in an engine maintenance program through Honeywell. The Aircraft was covered under that program until 2010.

**ANSWER:** JSSI lacks knowledge and information sufficient to form a belief as to the allegations of this paragraph.

8. In June, 2012, LAC entered into a Premium Hard-Time Engine Maintenance Program Contract with JSSI to cover the Engines (hereafter, the "Contract", attached hereto as Exhibit 1). Pursuant to the Contract, JSSI agreed to provide a program for repair and maintenance for the Engines. JSSI itself would not perform the repair and maintenance services; rather, JSSI would issue a work order and the repairs or maintenance services would be performed by an Approved Repair Facility.

**ANSWER:** JSSI admits that the parties entered into a contract effective as of June 26, 2012, and that a copy of the Contract is attached as Exhibit 1 to the Complaint. The Contract is in writing, and JSSI denies all allegations inconsistent with the terms thereof.

9. In connection with the Contract, LAC agreed to, and did, pay a $25,000 "enrollment fee" and then made monthly payments during each month of the contract term, based upon an established hourly rate and the flight hours logged during the month, as well as an administrative fee. In total, LAC has paid to JSSI more than $300,000 in connection with the Contract. JSSI has paid less than $4,000 for parts and labor associated with services provided to LAC under the Contract.

**ANSWER:** The Contract is in writing and JSSI denies all allegations inconsistent with the terms thereof. JSSI admits that LAC paid JSSI a $25,000 enrollment fee, LAC made certain monthly payments to JSSI, and LAC paid JSSI more than $300,000 under the contract. JSSI denies the remaining allegations of this paragraph.

10. The initial term of the Contract was sixty (60) months from June 26, 2012. Accordingly the initial term was due to expire on June 25, 2017.

**ANSWER:** JSSI admits the allegations of this paragraph.

11. Pursuant to Federal Aviation Regulations, periodic inspections are required on the Engines at specific intervals. A Major Periodic Inspections ("MPI") is required after 1500 flight hours. The MPIs are considered "Scheduled Maintenance" under the Contract.

**ANSWER:** JSSI admits the first and third sentences of this paragraph. Exhibit C to the Contract provides that MPIs are required after 1,400 flight hours. Accordingly, JSSI denies the second sentence of this paragraph.

12. The Contract requires LAC to provide at least 45 days' notice for Scheduled Maintenance. In February, 2017, LAC contacted JSSI to arrange a MPI service on the Engines. On or about February 27, 2017, JSSI identified two Authorized Repair Facilities to conduct the MPI service. LAC contacted both facilities and decided, on JSSI's recommendation, to bring the Aircraft to Dallas Airmotive Inc. ("DAI"), located in Dallas, Texas.

**ANSWER:** The Contract is in writing and JSSI denies all allegations inconsistent with the terms thereof. JSSI admits that it identified two Authorized Repair Facilities for MPI services for LAC's Engines. JSSI admits that LAC brought its Aircraft to DAI. JSSI denies making any recommendation concerning which of the two Authorized Repair Facilities LAC should use. JSSI lacks knowledge and information sufficient to form a belief as to the allegations of LAC's communications with both facilities, and JSSI denies all remaining allegations of this paragraph.

13. JSSI advised LAC that the MPI service would take approximately 10 days to complete. Thereafter, the parties, and DAI, had numerous communications to coordinate the date for delivery of the Aircraft to DAI for the MPI service.

**ANSWER:** JSSI denies the allegations of this paragraph.

14. LAC requested a date in the spring of 2017 for the MPI service. JSSI failed and refused to approve a date in the spring of 2017. Finally, on June 12, 2017, JSSI advised LAC that it had the "green light" to deliver the Aircraft to DAI. LAC delivered the Aircraft to DAI that same day (June 12, 2017).

**ANSWER:** JSSI denies the allegations of the first three sentences of this paragraph. On information and belief, JSSI admits that LAC brought the Aircraft to DAI on or about June 12, 2017, but otherwise denies the remaining allegations of the fourth sentence of this paragraph.

15. Pursuant to the Contract, LAC was responsible for a portion of the expense for each Scheduled Event, based on the hours and cycles consumed on the Engines. This portion of the expense was referred to in the Contract as LAC's "Pro Rata share."

**ANSWER:** The Contract is in writing and JSSI denies all allegations inconsistent with the terms thereof. JSSI admits that under the Contract, LAC was responsible for a portion of the expense for each Schedule Event and that this expense was referred to as LAC's *pro rata*.

4

16. JSSI sent an invoice to LAC on June 13 estimating LAC's Pro Rata share to be approximately $96,000 per engine. LAC asked JSSI to provide an actual quote for the work from DAI. LAC and JSSI thereafter agreed that upon receipt of the quote, LAC would pay one-half in advance and the other half upon completion of the work.

**ANSWER:** JSSI admits that it sent an invoice to LAC on June 13, 2017 indicating LAC's *pro rata* share was $96,324.28 per engine based on an estimate prepared by DAI. JSSI denies the second sentence of this paragraph. JSSI admits that as of June 2017, LAC was in default under the Contract for, among other things, failing and refusing to comply with trend monitoring requirements. JSSI admits that for a short period of time, it was willing to allow LAC to pay one-half of its *pro rata* share in advance of the MPI and the other half upon completion of the work, but prior to release of the Engines. However, JSSI was not required to allow LAC to do this and, in all events, LAC was still required to comply with all of its obligations under the Contract, including, but not limited to, all trend monitoring requirements and payment obligations, and, if not, JSSI was entitled to suspend performance of its own obligations under the Contract. JSSI denies all remaining allegations of this paragraph.

17. JSSI finally provided a quote for the MPI service on July 11, 2017 indicating LAC's Pro Rata share to be $192,648.56. LAC wired 50% of its Pro Rata share estimate to JSSI on July 21, 2017.

**ANSWER:** JSSI admits that it provided LAC with a quote on or about July 11, 2017 indicating that LAC's *pro rata* share for the MPI was $192,648.56. JSSI denies that this was the first time it provided the information to LAC. JSSI admits the second sentence of this paragraph and denies all reaming allegations of this paragraph.

18. Based on JSSI's representations that the work would take approximately 10 days, and that there was no need to even rent replacement engines or aircraft, LAC reasonably expected that the MPI service would be performed within approximately ten days of July 21, 2017. However, this did not happen. LAC discovered on or about August 3 that no work was being performed and the Aircraft was sitting idle. DAI informed LAC that JSSI had still not issued the work order for the MPI service and that the service could not be provided without such order.

**ANSWER:** JSSI denies the first two sentences of this paragraph. JSSI lacks knowledge and information sufficient to form a belief as to the allegations in the third and fourth sentence of this paragraph.

19. LAC contacted JSSI about the delay in issuing the work order and was advised that JSSI needed to execute a new contract before JSSI would issue the order for the MPI service, despite the fact that the service had been requested as early as February, 2017, and the Aircraft was delivered to the Authorized Repair Facility on June 12, 2017, when the Contract was still in effect.

**ANSWER:** JSSI admits that it advised LAC that JSSI had no obligation to provide any services to LAC unless LAC had complied with its own obligations under the Contract or after the expiration of the Contract on June 25, 2017. JSSI denies the remaining allegations of this paragraph.

20. Although it believed that the demand for a new contract as a condition for authorizing the work, which should be covered under the original Contract, was completely unjustified, LAC agreed to review and consider the proposed new contract. Thereafter, JSSI sent a new contract to LAC. LAC noted several problems with the proposed pricing related to the Pro Rata share calculation and, although JSSI agreed the calculations were incorrect, they refused to change the terms and continued to insist that LAC sign the new contract before any service would be authorized.

**ANSWER:** JSSI lacks knowledge and information sufficient to form a belief as to what LAC believed as alleged in the first sentence of this paragraph. JSSI admits that LAC agreed to review and consider a renewal contract, and that after the expiration of the Contract JSSI told LAC that JSSI would not provide further services to LAC absent a renewal contract. JSSI denies that certain calculations in the renewal contract were "incorrect" and denies any remaining allegations in this paragraph.

21. In late August, 2017, JSSI finally agreed to address the Pro Rata share calculation issue in a side letter. The new contract and side letter were received by LAC on August 28, 2017. LAC promptly executed and delivered the documents to JSSI (the "Renewal Contract").

**ANSWER:** JSSI admits that on August 22, 2017, it sent LAC a letter concerning contract renewal and the *pro rata* calculation. JSSI denies that this was the first time that it

6

raised renewal or the *pro rata* calculation with LAC. JSSI lacks knowledge or information sufficient to admit or deny the second sentence of this paragraph. JSSI denies that LAC acted promptly concerning renewal of the contract and denies all remaining allegations of this paragraph.

22. During the week of September 11, 2017, DAI informed LAC for the first time that the fuel system on the Aircraft needed to be tested. If indeed the fuel system needed to be tested, the only reason was that the Aircraft had been sitting idle in the open for three plus months which was due to JSSI's unjustified failure and refusal to issue the work order for the MPI service.

**ANSWER:** JSSI lacks knowledge and information sufficient to form a belief as to the allegations of the first sentence of this paragraph. JSSI denies the remaining allegations of this paragraph.

23. DAI conducted a fuel system test and recommended additional fuel system service. The estimated cost of this additional service is $97,800 per engine.

**ANSWER:** On information and belief, JSSI admits that DAI conducted a fuel system test. JSSI denies the remaining allegations of this paragraph.

24. On October 4, 2017, JSSI advised LAC that it would not proceed with the MPI service because the Aircraft now needed yet another test, an oil kit SOAP test.

**ANSWER:** JSSI admits that on or about October 4, 2017, it advised LAC of certain OEM requirements including an oil kit SOAP test, and JSSI denies all remaining allegations of this paragraph.

25. LAC disputed the responsibility to pay for the extra costs necessitated by JSSI's delay in authorizing the MPI service which had first been requested in February, 2017 and which had been given the "green light" in June. Unless LAC would agree to pay all of these costs, JSSI refused to authorize the MPI service, either under the Contract or the Renewal Contract that LAC had been pressured to sign.

**ANSWER:** JSSI admits that LAC has disputed its responsibilities to pay for, among other things, a fuel system test and an oil kit SOAP test. JSSI denies that these test and/or the

costs associated therewith were caused by JSSI. JSSI denies the remaining allegations of this paragraph.

26. Throughout the term of the Contract, LAC operated and maintained the Aircraft in accordance with the applicable Aircraft and Engine OEM maintenance requirements.

**ANSWER:** Denied.

27. At the time the MPI service was first requested in February 2017, and at all times thereafter through the term of the Contract, there were no Service Bulletins or Airworthiness Directives issued for the Aircraft.

**ANSWER:** JSSI admits that to its knowledge, no Service Bulletins or Airworthiness Directives were issued from February 1 to June 26, 2017 concerning the Engines, and JSSI denies all remaining allegations of this paragraph.

28. On or about October 20, 2017, JSSI terminated the Renewal Contract. Thereafter, JSSI deducted $29,670.51 from the Pro Rata share that LAC had deposited for the MPI service, and has retained that amount for its own benefit, claiming such amounts are due to it under either the Contract or the Renewal Contract.

**ANSWER:** JSSI admits the first sentence of this paragraph. JSSI admits that it applied $29,670.51 of LAC's payment from July 2017 to amounts due to JSSI and returned the balance of that payment to LAC. JSSI denies that it has "retained that amount for its own benefit" and further denies the remaining allegations of this paragraph.

29. The foregoing allegations are incorporated by reference into each of the following counts.

**ANSWER:** JSSI incorporates by reference as though fully set forth herein its answers to paragraphs 1-28 above.

### COUNT I
### (DECLARATORY JUDGMENT)

30. Because LAC requested the MPI service on the Engines in February, 2017 (more than 45 days prior to the end of the term of the Contract), and delivered the Aircraft to the Authorized Repair Facility at JSSI's direction on June 12, 2017, still within the original term of the Contract, the costs associated with the MPI service should be covered by the original Contract, notwithstanding that the initial term expired before JSSI finally authorized the work.

8

**ANSWER:** Denied.

31. JSSI is taking the position that the original Contract lapsed/expired before the work was performed and thus no coverage is available under that Contract, and it terminated the Renewal Contract so no coverage is available under that contract either. Accordingly, a substantial and continuing controversy exists as to the parties' rights and obligations under the Contract and Renewal Contract.

**ANSWER:** JSSI admits the second sentence of this paragraph, denies that LAC has fully or fairly set forth JSSI's position in the first sentence of this paragraph and denies any remaining allegations of this paragraph.

32. The controversy can be remedied by a declaration that the costs of the MPI service, less LAC's Pro Rata share, should be paid by JSSI under the Contract or, in the alternative, under the Renewal Contract, and that all extra costs necessitated by the fact that the Aircraft sat idle for more than 60 days, including the costs of the fuel system test and required service, must be paid by JSSI.

**ANSWER:** Denied.

## COUNT II
### (BREACH OF CONTRACT)

33. Pursuant to the Contract, Scheduled Maintenance shall be performed by an Approved Repair Facility at JSSI's expense for parts and labor, subject to a purchase order issued by JSSI on the Client's (here LAC) behalf, and subject to LAC's Pro Rata share.

**ANSWER:** The Contract is in writing and JSSI denies all allegations inconsistent with the terms thereof.

34. The Contract requires the Client (here LAC) to notify JSSI at least 45 days' in advance of any Scheduled Maintenance.

**ANSWER:** The Contract is in writing and JSSI denies all allegations inconsistent with the terms thereof.

35. MPI service is Scheduled Maintenance covered by the Contract.

**ANSWER:** The Contract is in writing and JSSI denies all allegations inconsistent with the terms thereof.

36. LAC notified JSSI of the need for MPI service on the Engines in February, 2017. Also in February, 2017, JSSI identified the Authorized Repair Facility and told LAC that the repair services would take approximately 10 days.

**ANSWER:** Denied.

37. By failing to schedule and authorize the MPI service for the Engines, JSSI breached its contractual obligations to LAC under the Contract.

**ANSWER:** Denied.

38. LAC has been damaged as a result of JSSI's breach of contract in the amount of the charges for the MPI service, less LAC's Pro Rata share.

**ANSWER:** Denied.

39. LAC has also suffered damages to the Engines and the Aircraft resulting from JSSI's failure to authorize the requested service, causing the Aircraft to sit idle for an extended period of time.

**ANSWER:** Denied.

40. Pursuant to the Contract, Section IV(h), LAC is entitled to its reasonable litigation expenses, including attorney's fees.

**ANSWER:** Denied.

## COUNT III
### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

41. JSSI failed and refused to schedule an appointment and authorize the MPI service for more than four months after such service had been requested by LAC.

**ANSWER:** Denied.

42. JSSI told LAC that the MPI service would take approximately 10 days to complete.

**ANSWER:** Denied.

43. When JSSI finally gave the "green light" to LAC to deliver the Aircraft to the Authorized Repair Facility on June 12, 2017, there was still more than 10 days left before expiration of the Contract.

**ANSWER:** JSSI admits that June 12, 2017 was more than 10 days before June 25, 2017 and denies all remaining allegations of this paragraph.

44. DAI, the Authorized Repair Facility, could not begin the MPI service until it received a work order from JSSI.

**ANSWER:** On information and belief, JSSI admits that DAI would not have begun the work without a work order. JSSI denies any remaining allegations of this paragraph.

45. JSSI did not issue a work order to DAI in order to authorize the MPI service before the end of the Contract term.

**ANSWER:** JSSI admits the allegations of this paragraph. However, JSSI had no obligation to issue the work order before the end of the Contract term for numerous reasons.

46. There is an implied covenant in the contract that JSSI would act promptly, or at least reasonably, in authorizing services covered by the Contract.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, denied.

47. There is also implied in the contract a covenant that in exercising its discretion regarding the scheduling and coordination of repair and maintenance services, that such discretion will not be exercised in a manner that is likely to result in harm to or additional expense for the Aircraft.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, denied.

48. The reason JSSI gave to LAC for its refusal to issue the work order was that the Contract was about to expire and that LAC would have to sign a new contract in order for the service to be performed.

**ANSWER:** Denied.

49. The delays in coordinating and authorizing the MPI service from February to June and then after the Aircraft was delivered to DAI on June 12, 2017, and then taking the position that no coverage is afforded under the Contract because the term expired, constitutes a breach of the implied covenant of good faith and fair dealing because the conduct was inconsistent with LAC's reasonable expectations regarding timing of repairs, the actions were taken with improper motive, and the actions made it impossible for LAC to realize the benefits of the Contract that it had paid more than $400,000 for.

**ANSWER:** Denied.

50. Failing to advise LAC that it should take preventative actions to protect the Engines from further damage/expense, while the Aircraft was sitting idle, or in the alternative advising DAI to take such precautions, was a breach of the implied covenant of good faith and fair dealing.

**ANSWER:** Denied.

51. As a result of JSSI's breach of the covenant of good faith and fair dealing, LAC has been damaged in an amount to be proven at trial but which includes JSSI's portion of the MPI service expenses that should have been covered by the Contract as well as damages caused by the delays in coordinating and authorizing the services.

**ANSWER:** Denied.

WHEREFORE, Defendant JSSI respectfully requests that the Court enter judgment in favor of JSSI, and further award JSSI: (a) its costs of suit and litigation expenses, including, but not limited to, attorneys' fees (as expressly provided for under the contract); and (b) such other and further relief as is appropriate.

## AFFIRMATIVE DEFENSES

JSSI, by and through its attorneys, hereby sets forth the following affirmative defenses to LAC's Complaint. By listing a matter as an affirmative defense, JSSI does not assume the burden of proving any matter on which LAC bears the burden of proof. JSSI reserves the right to assert additional affirmative defenses at a later date.

## FIRST AFFIRMATIVE DEFENSE

1. LAC's claims are barred in whole or part by its own breaches of contract, as set forth in JSSI's Counterclaim below, which is incorporated by reference herein.

## SECOND AFFIRMATIVE DEFENSE

2. LAC's claims are barred in whole or in part by the failure of a condition precedent, in particular, LAC's failure to comply with its own contractual obligations to JSSI, as alleged in JSSI's Counterclaim below, which is incorporated by reference herein.

### THIRD AFFIRMATIVE DEFENSE

3. LAC's claims are barred in whole or in part by its own failure to mitigate its damages by complying with its written contract with JSSI, as alleged in JSSI's Counterclaim below, which is incorporated by reference herein.

### FOURTH AFFIRMATIVE DEFENSE

4. JSSI has certain claims against LAC, as alleged in its Counterclaim below, which is incorporated by reference herein. To the extent JSSI is entitled to any recovery under the claims of its Counterclaim, it is entitled to setoff/recoupment against any recovery obtained by LAC.

### FIFTH AFFIRMATIVE DEFENSE

5. Count III of LAC's Complaint is barred because under Illinois law, there is no independent cause of action for breach of the implied covenant of good faith and fair dealing.

WHEREFORE, Defendant JSSI respectfully requests that the Court enter judgment in favor of JSSI, and further award JSSI: (a) its costs of suit and litigation expenses, including, but not limited to, attorneys' fees (as expressly provided for under the contract); and (b) such other and further relief as is appropriate.

### COUNTERCLAIM

Counter-Plaintiff JSSI, by its attorneys, as and for its Counterclaim against LAC, alleges as follows:

### GENERAL ALLEGATIONS

1. JSSI is a Delaware corporation with its principal place of business in Chicago, Illinois.

2. On information and belief, LAC is a corporation organized under the laws of Mexico with its principal place of business in Saltillo, Coahuila, Mexico.

3. JSSI offers programs that help jet aircraft owners finance the significant and highly unpredictable costs of maintaining and repairing jet aircraft engines, airframes and auxiliary power units. JSSI itself does not perform maintenance or repair services. It assists with the financing of the costs thereof. The actual maintenance services are performed by third parties who are approved by the original equipment manufacturer (OEM), and the Federal Aviation Authority (FAA) or other governing aviation authority. The programs to provide these services are set forth in written contracts between JSSI and its customers.

4. LAC owns and/or operates at least one jet aircraft.

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the controversy is between a citizen of a State and a citizen of a foreign state, and the matter in controversy exceeds the sum of $75,000.

6. This judicial district is a proper venue for this action because: (a) the defendant JSSI resides in Illinois; (b) a substantial part of the events or omissions giving rise to the claim occurred this judicial district; and/or (c) the counterclaim defendant LAC is subject to the Court's personal jurisdiction with respect to this action.

## COUNT I
**(Breach of Contract)**

7. JSSI incorporates paragraphs 1 through 6 of this Counterclaim above as though fully set forth herein.

8. Effective on or about June 26, 2012, JSSI and LAC entered into a written contract called a JSSI Premium Hard Time Engine Maintenance Program Contract ("Contract JSSI0012009") concerning a Bombardier/L31 aircraft, registration no. XA-UJQ (the "Aircraft"),

14

with two Honeywell engines (the "Engines"). A true and correct copy of Contract JSSI0012009, as amended, is attached hereto as Exhibit 1. Under Contract JSSI0012009, JSSI assumed the risk that the maintenance expenses of the Engines during the term of the contract would exceed all amounts LAC paid under the contract during the term thereof.

9. Among other things, Contract JSSI0012009 required that LAC: (a) report monthly to JSSI the number of flight hours that the Engines accrued each month (Ex. 1, § IV); (b) pay monthly to JSSI a service charge equal to the number of flight hours accrued each month multiplied by the then applicable Hourly Rate under the contract (with a minimum of 100 flight hours per engine per year under the contract, as amended) (*id.*) ; (c) pay JSSI its *pro rata* share of certain maintenance costs concerning the Engines (*id.*, § I); and (d) comply with any oil analysis program and/or engine trend monitoring program, if required by the Engine's original equipment manufacturer ("OEM") or JSSI. (*id.*, § II(a)(v)).

10. LAC's Engines are Honeywell Model TFE731-2C-3B. Honeywell, the OEM of the TFE731-2C-3B, recommends trend monitoring with Jet Care for all TFE731 engines, including TFE731-2C-3B. Under Honeywell's MSP (maintenance service program) contract, all operators must comply with manufacturer recommendations regarding the operation and maintenance of their engines. Therefore, enrollment and participation in the Jet Care trend monitoring program is mandatory under Honeywell's MSP. Further all operators of the TFE731 -- whether MSP operators or not -- who want to participate in Honeywell's special programs for reduced pricing for component part replacement must be enrolled and participating in Jet Care trend monitoring to qualify. Therefore, JSSI required that LAC participate in a trend monitoring program -- to monitor the "health" of LAC's Engines at no additional charge to LAC.

15

11. Thus, JSSI required that LAC send its trend monitoring data to a third-party trend monitoring service provider, Jet Care, on a periodic basis.

12. Despite repeated demand by Jet Care and JSSI, beginning in or about November 2015, LAC failed and refused to send its trend monitoring data to Jet Care. Therefore, well in advance of June 12, 2017: (a) JSSI advised LAC that JSSI put LAC's account on hold; and (b) JSSI suspended its further performance under the Contract.

13. Accordingly, when LAC delivered the Aircraft and Engines to DAI on or about June 12, 2017, LAC had known for about a year that it was on credit hold and JSSI had suspended its own performance under the Contract.

14. JSSI repeated its position to LAC between June 13 and June 25, 2017.

15. Nevertheless, LAC did not cure its defaults prior to expiration of the Contract, which lapsed on June 25, 2017.

16. Moreover, as of June 10, 2017, LAC owed JSSI $4,035.05 for monthly flight hours, which LAC did not pay prior to June 25, 2017.

17. LAC's Aircraft and Engines sat idle at DAI from on or about June 12, 2017 to at least October 3, 2017, which is a period well in excess of 100 days. For the reasons described herein, JSSI was not responsible for the delay or for the fact that LAC's Aircraft and Engines were not used during that period.

18. Honeywell's applicable maintenance manual procedures require inspections of the Engines for fuel system contamination when they are not used for a period of 60 days or more.

19. In Contract JSSI0012009, LAC affirmatively agreed to comply with all OEM maintenance manual procedures in connection with storing, preserving, and operating the Engines.

20. Despite demand, LAC failed and refused to perform and/or pay for OEM-required inspections of the airframe and Engines for fuel system contamination, in violation of Section II(a)(ii) of the Contract.

21. JSSI had no obligation arising from LAC's failure to comply with OEM requirements for, among other things, fuel system contamination which failure constitutes "Abuse," and which is expressly excluded from coverage. (Contract § I(i)(i).)

22. Nor is JSSI responsible for any consequential damages (*Id.* § I(l)(iv)), especially those resulting from LAC's non-performance or Abuse.

23. On or about September 13, 2017, JSSI and LAC entered into a five-year renewal of Contract JSSI0012009 for the Aircraft and Engines for substantially similar coverage as the original contract (the "Renewal Contract," as amended, a copy of which is attached hereto as Exhibit 2). In addition to certain other fees, the Renewal Contract required LAC to pay JSSI an annual service charge of $3,267.21 per engine, a monthly service charge of $2,387.63 per Engine, plus $286.63 per Engine for every flight hour over 100 hours per year.

24. The Renewal Contract was to be effective as of June 26, 2017. However, notwithstanding the Renewal Contract, LAC was still required to bring itself into compliance with the JSSI program to enjoy the benefits thereof.

25. Pursuant to Section I(a) of Contract JSSI0012009 and the Renewal Contract (collectively, the "Contracts"), JSSI had the right to require that LAC pay its *pro rata* share of certain costs in advance of that maintenance work being performed.

26. Despite repeated demand, even after execution of the Renewal Contract, LAC failed and refused to: (a) pay the open invoice for monthly flight hours due under Contract JSSI0012009 and pay the monthly service charges and annual reduced minimum service fee

17

which accrued under the Renewal Contract in the total amount of $29,670.51; (b) comply with the trend monitoring requirement set forth in Sections II(a) of the Contracts; (c) comply with JSSI's requirement that LAC pay for its *pro rata* share of certain maintenance expenses in advance of the maintenance work; and (d) perform and/or pay for the OEM – required fuel system contamination inspections of the Engines and airframe in violation of Section II of the Contracts, which failure constituted "Abuse" under the Contracts, and which is expressly precluded from coverage under Section I(i)(i) of the Contracts.

27. Accordingly, JSSI terminated the Contracts on October 20, 2017.

28. JSSI performed all of its obligations under the Contracts, or its performance has been excused or waived due to LAC's actions and/or by operation of law.

29. LAC's failures to perform, as identified above, constitute material breaches of the Contracts.

30. LAC's failures to perform, as identified above, also constitute an unreasonable and vexatious delay of payment of money due on a written instrument pursuant to 805 ILCS 205/2. Accordingly, JSSI also is entitled to recover prejudgment interest.

31. As a result, JSSI has been damaged in an amount to be proven at trial in excess of $55,000.00

32. Pursuant to Section IV of the Contracts, JSSI also is entitled to recover late payment charges, and its collection expenses and costs, including but not limited to its reasonable attorneys' fees.

WHEREFORE, Counter-Plaintiff JSSI respectfully requests entry of an Order of Judgment in its favor and against LAC in an amount to be proven at trial in excess of $55,000.00, plus pre-judgment interest under 815 ILCS 205/2, and awarding JSSI its costs, attorneys' fees,

other collection expenses and costs and late payment charges, as provided in the Contracts, and such other and further relief as is appropriate.

Respectfully submitted,

JET SUPPORT SERVICES, INC.,

By: /s/ Carl M. Johnson
    One of Its Attorneys

Monte L. Mann
*mmann@novackmacey.com*
Carl M. Johnson
*cjohnson@novackmacey.com*
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
Telephone: (312) 419-6900
Fax: (312) 419-6928
#979461v3

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served a copy of the foregoing **Jet Support Services, Inc.'s Answer to Complaint and Counterclaim** upon all counsel of record by causing a true and correct copy thereof to be delivered by electronically filing the document with using the CM/ECF system on the 13th day of February, 2018.

/s/ Carl M. Johnson