## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LINEAS AEREAS COMERCIALES  )
S.A. de C.V.,                )
               Plaintiff,     )
                     )
            v.                )      17 C 8666
                     )
JET SUPPORT SERVICES, INC.,   )
                     )
             Defendant.     )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Jet Support Services, Inc.'s ("JSSI") motion for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, the motion is denied.

## BACKGROUND

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.

Plaintiff Lineas Aereas Comerciales S.A. de C.V. ("LAC") is a corporation organized under the laws of Mexico, with its principal place of business in Saltillo,

Coahuila, Mexico. Dkt. # 63 at ¶ 1.[1] LAC provides air taxi services for Caopas, a mining company. *Id.* Captain Marco Melo ("Melo") is LAC's pilot, and Luis Romero ("Romero") is LAC's general manager. *Id.* at ¶ 2.

JSSI is a Delaware corporation with its principal place of business in Chicago, Illinois. Robert Burda ("Burda") manages JSSI's product-line specialists team. Dkt. #67 at ¶ 1. JSSI finances a portion of the costs of repairing jet aircraft engines, airframes and auxiliary power units. Dkt. # 63 at ¶ 3. The maintenance and repair services are performed by third parties approved by the original equipment manufacturer ("OEM") and the Federal Aviation Authority ("FAA") or other governing aviation authority. *Id.*

On June 26, 2012, LAC and JSSI entered into a Premium Hard-Time Engine Maintenance Program Contract (the "Contract"). The Contract term was 60 months, or until June 26, 2017, *id.* at ¶ 6, and covered maintenance services for two Honeywell engines ("the Engines") that are installed on LAC's 1990 Learjet 31 (the "Aircraft"). *Id.* at ¶ 7. In exchange, LAC agreed to pay monthly flight hours payments, an annual minimum service charge, and a reduced minimums annual fee. *Id.* at ¶ 2.

Around February 23, 2017—approximately four months before the Contract expired—LAC contacted JSSI about performing a Major Periodic Inspection ("MPI") for the Engines, as required by aviation regulations. *Id.* at ¶ 22. JSSI informed LAC of the available approved repair facilities, and LAC chose to bring the Engines to Dallas

---

[1] All docket references refer to entries in docket number 1:17-cv-08666.

Airmotive Inc. ("DAI"). *Id.* at ¶ 22–23.

Between March and June 2017, LAC alleges that it coordinated with JSSI about scheduling the MPI and delivering the Aircraft to DAI. Dkt. #67 at ¶ 10. JSSI disputes this allegation, claiming that the parties did not communicate about the MPI during that period. *Id.*

However, the parties agree that during this period they were in discussions about entering into a Renewal Contract after the original one expired. Dkt. # 63 at ¶ 24. Although JSSI did not expressly condition its performance of the MPI on LAC's entry into a Renewal Contract, LAC alleges that JSSI did not intend to perform the MPI until the Contract was renewed. *Id.* For support, LAC cites evidence showing that JSSI placed its accounts on a "credit hold" due to the pending renewal, which automatically prevented JSSI from generating any purchase orders required to perform the MPI. *Id.* LAC also cites testimony by Burda stating that JSSI's performance of the MPI was essentially conditioned upon LAC's entry into the Renewal Contract. *Id.*

On May 24, 2017, LAC executed an Application to Renew the JSSI Hourly Cost Maintenance program. *Id.* at ¶ 25. The parties agree that the execution of this application was an agreement that LAC will renew the Contract. *Id.* However, they dispute whether the Renewal Contract became effective upon the expiration of the old one or once LAC executed the actual contract in September. *Id.*

On June 12, 2017, LAC delivered the Aircraft to DAI for the MPI service. *Id.* at ¶ 27. That day, JSSI informed LAC that its share of the MPI was approximately

$96,324.28 per engine and that LAC had to pay this share in advance. *Id.* at ¶ 28. A day later, JSSI sent LAC an invoice in this amount and demanded advance payment of the full amount as a prerequisite to issuing any purchase orders for the MPI. *Id.* at ¶ 30. LAC alleges that on that day it requested JSSI's approval to pay its share in two installments—LAC would pay one invoice for the MPI before the work started, and another after the work was completed but before the Engines were released—and that JSSI provide a quote for the cost of the maintenance before LAC made the advance payment. Dkt. # 67 at ¶ 19. JSSI disputes the date that LAC made these requests and the date that it approved them. Dkt. # 63 at ¶ 35; Dkt. # 67 at ¶ 19.

Specifically, LAC alleges that it made the requests on June 13 and that JSSI agreed on June 19, 2017. LAC further alleges that it informed JSSI it wished to review the quote before making any advance payments. Dkt. # 67 at ¶ 19. JSSI disputes all these allegations, claiming that internal emails from June 15 show it intended to ask for full payment up front, that the half-and-half agreement was not reached until much later, and that LAC did not request the quote for the MPI service until July 5, 2017. *Id.* at ¶ 20.

Once the Contract expired on June 26, 2017, JSSI informed LAC that the Renewal Contract would have to be signed and invoices would need to be paid before it would issue purchase orders for the MPI. Dkt. # 63 at ¶ 34. JSSI did not provide the Renewal Contract until July 6, 2017. Dkt. # 67 at ¶ 31. On July 13, 2017, JSSI provided the requested quote, and LAC paid the first half of its agreed percentage of the

maintenance under the Contract on July 24, 2017. *Id.* at ¶ 20. LAC did not execute the Renewal Contract until September 5, 2017. Dkt. # 63 at ¶ 41. On September 7, 2017, two days after LAC signed the Renewal Contract, JSSI issued the MPI's purchase orders to DAI. *Id.*

As these events unfolded, the Aircraft remained idle at DAI. According to JSSI, the OEM manual requires that the Engines be run every 60 days. *Id.* at ¶ 37. If the Engines could not be run, JSSI claims that Honeywell requires certain steps be taken to preserve them. *Id.* According to JSSI, the preservation steps require an engine inspection, an oil SOAP test to determine the amount of water in the oil, and a fuel sample test to detect fungal growth in the fuel. If fungal growth is detected, an overhaul of the fuel system components must be completed before the Engines are functional. *Id.* at ¶ 38. LAC disputes that Honeywell actually required that the Engines be run every 60 days, alleging this was only recommendable. *Id.* at ¶ 37. LAC further objects to JSSI's allegations about the engine preservation steps as unsupported by admissible evidence. *Id.* at ¶ 38.

On September 12, 2017, Melo flew to DAI to run the Engines but DAI prohibited him from doing so because JSSI had not authorized it. *Id.* at ¶ 40. Shortly thereafter, DAI informed LAC that the fuel system needed to be tested for fungal contamination because the Aircraft's Engines had not been run for over 90 days. *Id.* at ¶ 42. Testing revealed that the fuel system was contaminated, and the parties agree that the contamination occurred while the Aircraft was in DAI's possession. *Id.* at ¶ 43–44.

On October 4, 2017, JSSI advised LAC that LAC must authorize the fuel system overhaul and an oil kit SOAP test for the Aircraft. *Id.* at ¶ 45. LAC does not dispute this, but further alleges that JSSI directed it to pay for the overhaul and SOAP test before JSSI would perform the MPI. *Id.* at ¶ 45. LAC refused to pay for the cost of the fuel system overhaul because the damage to the engine occurred while the Aircraft was under JSSI's control. *Id.* at ¶ 49. JSSI claims it did not have to pay for the fuel system overhaul and SOAP test because they resulted from LAC's failure to maintain the Engines, which qualifies as abuse that is excluded from coverage under the Contract. LAC responds that it could not have abused the Engines because it was DAI who prohibited LAC from running the Engines without authorization from JSSI.

On October 5, 2017, JSSI issued a statement to LAC for monthly payments under the Renewal Contract for the months of July, August, and September. JSSI also notified LAC that it was in breach of the Renewal Contract. *Id.* at ¶ 53. The October 5 statement also listed as unpaid reduced minimum fees under the Renewal Contract and a June 2017 invoice under the original Contract. *Id.* at ¶ 55. LAC claims that the first time it received an invoice under the Renewal Contract was on October 5, and disputes that it had any obligations under the Renewal Contract that predated September 4, 2017, when it signed that document. *Id.* LAC further alleges that the statement lists as outstanding the second Pro Rata Share, which JSSI had agreed would be paid after the MPI was completed. *Id.*

On October 11, 2017, LAC responded to JSSI by requesting that JSSI contact

LAC's counsel to negotiate a solution and threatened legal action if the Aircraft was not functional and duly serviced by October 31, 2017. *Id.* at ¶ 60. In response, JSSI terminated the Renewal Contract. *Id.* at ¶ 61.

On November 16, 2017, JSSI refunded the partial payment that LAC made for the MPI, less $29,670 that JSSI alleges LAC owed under the Contract and Renewal Contract. *Id.* at ¶ 62. The parties agree this amount represents the unpaid June 2017 invoice for $4,035 plus unpaid monthly payments for $14,325.78, unpaid reduced minimum fee of $6,534.42 and an unpaid October monthly payment of $4,755.26. *Id.*

Based on these events, LAC filed its complaint against JSSI on November 30, 2017, seeking a declaratory judgment under Count I, and alleging claims for breach of contract and implied covenant of good faith and fair dealing in Counts II and III respectively. On February 13, 2018, JSSI answered the complaint and filed a counterclaim for breach of the Renewal Contract.

**Relevant Provisions under the Original Contract**

Under the Contract, each party would pay an agreed percentage ("Pro Rata Share") of the parts and labor for scheduled maintenance on the Engines. Dkt. # 63 at ¶ 8. Specifically, the Contract provided:

> Scheduled Maintenance shall be performed by an Approved Repair Facility at JSSI's expense for parts and labor, subject to a purchase order issued by JSSI on the Client's behalf, and subject to the Client's Pro Rata share described on Exhibit C. The Client agrees to notify JSSI at least forty-five (45) days in advance of Scheduled Maintenance.

*Id.* at ¶ 9. "Scheduled Maintenance" under the Contract included MPIs that must be

completed after 1400 flight hours as required under aviation regulations. *Id.* at ¶ 19. The parties agreed that JSSI would cover 30.48% and LAC would cover 69.52% of the MPI. *Id.* at ¶ 20. The Contract further provided JSSI with discretion to require that LAC pay an amount up to its full Pro Rata Share in advance of a scheduled maintenance. *Id.* at ¶ 21.

However, the parties dispute the Contract's timing requirements for issuing purchase orders for an MPI. JSSI claims that the Contract required it to issue purchase orders once LAC made an advance payment, while LAC alleges that the Contract provided no guidance on when JSSI must issue purchase orders. Dkt. # 67 at ¶ 5.

The Contract further required LAC to comply with an engine trend monitoring program that requires an aircraft operator to collect and submit certain engine performance data to help detect problems. Dkt. # 63 at ¶¶ 11–12. JSSI also had the discretion to use the trend monitoring data to determine, in good faith, whether LAC operated the Engines according to the Aircraft flight manual. *Id.* at ¶ 13. LAC only disputes the frequency with which the Contract required it to report trend monitoring data. *Id.* at ¶ 11.

LAC further warranted that it would operate and maintain the Engines according to Aircraft and Engine manual procedures. *Id.* at ¶ 16. Failing to do so would constitute "Abuse" under the Contract and would discharge JSSI from covering repairs for any damages resulting from such abuse. *Id.* at ¶ 48. The Contract further absolved JSSI from any incidental, special, indirect or consequential damages relating to any failure

8

by JSSI to perform its obligations under the Contract. *Id.* at ¶ 50. Finally, JSSI alleges that the Contract also required that invoices be paid within 30 days of their issuance. *Id.* at ¶ 15. LAC disputes that this requirement covered all payments, alleging instead that it only applied to monthly payments. *Id.*

**Relevant Provisions under the Renewal Contract**

LAC signed the Renewal Contract on September 5, 2017. Dkt. # 63 at ¶ 7. The Renewal Contract stated that it is "entered into as of June 26, 2017, by and between [LAC and JSSI]." Dkt. # 48-1 at 214. But LAC disputes that it had any obligations before it signed the Renewal Contract on September 5, 2017. Dkt. # 63 at ¶ 55. Instead, LAC alleges that it had merely agreed to renew the Contract when it signed the renewal application on May 24, 2017, but that the Renewal Contract did not become effective until it was signed in September. *Id.* at ¶ 26. For support, LAC cites communications between Romero and JSSI on August 1, 2017, in which Romero objected to signing an agreement without being aware of the terms or conditions and insisting there be mutual agreement as to the terms of the Renewal Contract. *Id.*

In any event, the Renewal Contract contained similar requirements as the original Contract, but it expressly required that all payments be made within 30 days of an invoice being issued. *Id.* at ¶ 15. Monthly payments under the Renewal Contract were due on the tenth of each month. *Id.* at ¶ 53. It also allowed JSSI to collect management fees that were comprised of two categories: (a) a percentage of each monthly payment LAC would have made over the life of the Renewal Contract; and (b) a portion of LAC's

annual minimum service charge payments.  Dkt. # 63 at ¶ 63; *see also* Dkt. # 48-1 at

235.  Finally, the Renewal Contract provided a termination clause stating:

> In the event the Client fails to pay any amounts due and owing hereunder
> or under any other written agreement between the Client and JSSI within
> 30 days of the applicable invoice date, or in the event the Client fails to
> perform any of its other obligations hereunder . . . and after written notice
> of such failure to perform and the passage of a 30-day period such failure
> to perform persists, then, in addition to any other rights set forth herein,
> JSSI shall have the right to terminate this Contract upon written notice
> thereof to the Client, and the liability of the parties in further performance
> of this Contract shall be terminated effective as of the date of the Client's
> receipt of such notice.  (Renewal Contract, Appx. Ex. 6, § III.f.)

Dkt. # 48-1 at 224.  The Contract further provides that upon early termination,

> (i)      The Client shall immediately pay all amounts due and owing by the
> Client through the date of termination of this Contract, including any
> Minimum Service Charges accrued through the date of such termination;
> (ii)     The Client's right to any amounts previously paid by it to JSSI
> and/or the Trust shall be forfeited;
> (iii)    The Client's rights in and to the Credit and Account Balance as of
> the date of such termination shall be forfeited; and
> (iv)     The Client shall return all equipment on loan to the Client
> hereunder.

*Id.* at 225.

LAC asserts claims for breach of contract and the covenant of good faith and fair

dealing resulting from JSSI's failure to timely schedule and authorize the MPI, failure

to issue a purchase order for the MPI until after the Contract expired, and refusal to

provide coverage for the MPI after LAC made an advance payment on its Pro Rata

Share.  JSSI asserts a counterclaim alleging breach of the terms of the Renewal Contract

when LAC failed to pay the July, August, and September 2017 monthly payments, and

refused to authorize a SOAP test and overhaul for the Aircraft's fuel system. On August 2, 2019, JSSI moved for summary judgment on all of LAC's claims and its own counterclaim.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted).

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The nonmovant "must go beyond the pleadings (e.g., produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [their] favor." *Id*. (citation and internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). And "[c]onclusory statements, not grounded in specific facts"

cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (citation and internal alteration omitted).

At this stage of the proceeding, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650 (2014). It cannot weigh conflicting evidence, assess the credibility of witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704–05 (7th Cir. 2011).

## DISCUSSION

First, JSSI argues that LAC's declaratory judgment claim fails because it seeks to remedy past conduct. Second, JSSI argues LAC's breach of contract claim fails because LAC has not established that it performed its obligations under the Contract. Third, JSSI argues that LAC's good faith and fair dealing claim fails because LAC has not established that the Contract provided JSSI with discretion, or that JSSI exercised its contractual discretion in bad faith. Finally, JSSI urges the Court to grant summary judgment on its counterclaim under the Renewal Contract. The Court addresses each argument in turn.

## I.    Declaratory Judgment

In Count I, LAC seeks a declaration that JSSI must pay its Pro Rata Share of the MPI service under the Contract and that JSSI is responsible for all extra costs resulting from the Aircraft sitting idle for over 60 days. JSSI argues that LAC lacks standing to

seek a declaratory judgment because it has already paid for the costs of the MPI, and therefore, its injury has already occurred and LAC cannot seek a declaration as to past conduct. We do not reach this argument because we dismiss Count I as duplicative of Count II.

The purpose of a declaratory judgment is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued." *Cunningham Bros. v. Bail*, 407 F.2d 1165, 1167–68 (7th Cir. 1969) (*quoting E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937)). The Declaratory Judgment Act contemplates two situations: (1) where the controversy has ripened to where one party could invoke a corrective remedy but has not done so; and (2) where though the controversy is real and immediate, it has not ripened to such point, and it would be unfair or inefficient to require the parties to wait. *MiMedx Grp., Inc. v. Fox*, 2018 WL 558500, at *7 (N.D. Ill. 2018). This case falls under neither situation because the parties have invoked a corrective remedy, *i.e.* breach of contract claims.

Furthermore, "[i]t is well settled that federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Tempco Elec. Heater Corp v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987). Courts regularly exercise this discretion to dismiss declaratory judgment claims that "fail[ ] to add anything not already raised in [a] breach of contract claim." *E.g.*, *Lansing v. Carroll*, 868 F. Supp. 2d 753, 76374 (N.D. Ill. 2012); *see also Zic v. Italian Gov't Travel*

*Office*, 130 F. Supp. 2d 991, 99798 (N.D. Ill. 2001) ("[a] declaratory judgment action may be dismissed where a party seeks to enforce his rights after the fact" and has a separate claim "for breach of contract"); *Karimi v. 401 N. Wabash Venture, LLC*, 952 N.E.2d 1278, 1283 (Ill. App. Ct. 2011) ("a court may dismiss [a declaratory judgment claim] if a party seeks to enforce his rights after the fact" and the "allegations are properly breach of contract allegations").  As the Illinois Appellate Court reasoned in *Karimi*, the purpose of a declaratory judgment claim is "to address a controversy after a dispute arises but before steps are taken that give rise to a claim for damages or other relief."  952 N.E.2d at 1283.  Thus, "[a] claim for declaratory judgment" is an inappropriate "vehicle for presenting what are, in essence, plaintiffs' breach of contract allegations."  *Id.*

LAC's requests under Count I seek relief from JSSI's breach of contract, which is alleged in Count II.  Count II alleges that JSSI breached the contract by failing to timely authorize service for the Engines causing the Aircraft to sit idle for an extended period that resulted in damages to the Aircraft's fuel system.  And like Count I, Count II alleges damages in the amount of JSSI's Pro Rata Share of the MPI plus repair costs for the damage to the fuel system.  Resolving both claims, therefore, requires the Court to make the same determinations: whether JSSI breached the Contract when it failed to timely schedule the MPI service and then refused to pay for its share of the MPI, and whether, under the Contract, JSSI is responsible for the damage to the fuel system caused by the Aircraft sitting idle for an extended period.

Because the Court finds that LAC's breach of contract claim in Count II is the better vehicle to resolve these issues, it exercises its discretion to dismiss LAC's duplicative requests for relief in Count I. *See Karimi*, 952 N.E.2d at 1283; *see also Lansing*, 868 F. Supp. 2d at 76364 ("Because the declaratory judgment claim (Count I) fails to add anything not already raised in the breach of contract claim (Count II), in an exercise of discretion the court dismisses Count I."). Accordingly, we deny as moot JSSI's motion for summary judgment on Count I.

## II.     Breach of Contract and the Covenant of Good Faith and Fair Dealing

LAC's complaint presents two separate counts for breach of contract and breach of the covenant of good faith and fair dealing. But as this Court clarified in *Boone v. MB Financial Bank, N.A.*, "Illinois law … does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing. This covenant merely aids in contractual interpretation and is not an independent source of contractual duties or liability." 375 F. Supp. 3d 987, 995 (N.D. Ill. 2019) (citing *Voyles v. Sandia Mortgage Corp.*, 196 Ill.2d 288 (2001); *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013); *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1210 (N.D. Ill. 2015)).

This understanding follows that of courts throughout this District. *Griffin v. U.S. Bank, N.A.*, 2019 WL 4597364, at *8 (N.D. Ill. 2019) ("The implied covenant [of good faith and fair dealing] is not an independent source of duties; rather, it guides the interpretation of the terms of the contract."); *Fair Isaac Corp. v. Trans Union, LLC*,

2019 WL 1436018, at *3 (N.D. Ill. 2019) ("[I]t is settled law in Illinois that a breach of good faith and fair dealing cannot be an independent cause of action."); *Hickman v. Wells Fargo Bank, N.A.*, 683 F. Supp. 2d 779, 793 (N.D. Ill. 2010) (collecting cases). "Instead, a breach of the implied duty, if anything, gives rise to a breach of contract claim." *Ride Right, LLC v. Pace Suburban Bus*, 2018 WL 6446410, at *5 (N.D. Ill. 2018) (internal citations omitted). Accordingly, we construe LAC's claim that JSSI breached the covenant of good faith and fair dealing as part and parcel of its breach of contract claim. *Id.*

To succeed on a breach of contract claim under Illinois law, LAC must establish: (1) the existence of a valid and enforceable contract; (2) performance by LAC; (3) breach of contract by JSSI; and (4) resulting injury to LAC. *Applied Indus. Materials Corp. v. Mallinckrodt, Inc.*, 102 F. Supp. 2d 934, 937 (N.D. Ill. 2000) (citing *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192 (1999)). The contractual language itself determines the parties' intent, and the entire contract must be viewed as a whole. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (Ill. 2007). If a contract unambiguously answers the issue raised by a party, the Court must give effect to the contract as written. *Quake Const., Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281 (Ill. 1990). Before addressing the parties breach arguments, the Court will first resolve the parties' dispute as to when the Renewal Contract went into effect.

## A. Effective Date of the Renewal Contract

LAC argues that the Renewal Contract did not go into effect until September,

16

when it signed the actual document. JSSI responds that the date the Renewal Contract was signed is immaterial because the first page of the Renewal Contract provides that it was entered into as of June 26, 2017. The Court agrees.

In Illinois, "it is elementary that ordinarily a contract speaks from the day of its date, regardless of when it was executed and delivered." *Janowiak v. Tiesi,* 402 Ill. App. 3d 997, 1003 (2010) (quoting *Monahan v. Fidelity Mutual Life Insurance Co.,* 148 Ill. App. 171, 174 (1909)). Illinois courts have permitted the "relation back" theory of contract effectiveness: "that is, contractual terms may be effective for a period before the contract is executed, so long as such coverage is clear from the face of the contract." *Grubb & Ellis Co. v. Bradley Real Estate Trust,* 909 F.2d 1050, 1054 (7th Cir.1990) (emphasis omitted.). Thus, the date that LAC signed the Renewal Contract is irrelevant as the instrument states that it was entered into on June 26, 2017.

Accordingly, the Court finds that the parties were bound by the Renewal Contract as of June 26, 2017. Therefore, the parties' relationship was continuously subject to the terms of either the original or the Renewal Contract, which are substantially similar. The Court will next address the parties' respective breach arguments.

### B. LAC's Claims

LAC asserts claims for breach of contract and the covenant of good faith and fair dealing resulting from JSSI's failure to timely schedule and authorize the MPI, failure to issue a purchase order for the MPI until after the Contract expired, and refusal to provide coverage for the MPI after LAC made an advance payment on its Pro Rata

17

Share.

JSSI contends that LAC has failed to establish its breach of contract claim, arguing that the undisputed facts show that LAC failed to comply with a condition precedent before the Contract expired. Given that LAC failed to perform a condition precedent, JSSI asserts that it could not have breached the Contract because its obligations thereunder were never triggered. LAC responds that the Contract did not contain a condition precedent, or in the alternative, that JSSI waived the condition.

### 1. Breach of Contract: Condition Precedent

To resolve this dispute, the Court must first determine whether the Contract contained a condition precedent. If it does, the Court must then determine whether JSSI waived that condition. If JSSI has not waived the condition, we then must determine whether LAC failed to perform the condition.

#### *(i) Whether JSSI's Performance was Subject to a Condition Precedent*

"Under Illinois law, a condition precedent is some act that must be performed or event that must occur before a contract becomes effective or *before one party to an existing contract is obligated to perform*." *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 633 (7th Cir. 1992) (Illinois law; emphasis added); *see also Carollo v. Irwin*, 2011 IL App (1st) 102765, ¶ 23; *Kilianek v. Kim*, 192 Ill. App. 3d 139, 142 (1st Dist. 1989). The party alleging a condition precedent "bears the burden of establishing that the parties intended to create a condition at the time the contract was made." *Homeowners Choice, Inc. v. Aon*

18

*Benfield, Inc.,* 938 F. Supp. 2d 749, 758 (N.D. Ill. 2013), aff'd 550 Fed.Appx. 311 (7th Cir. 2013) (citation omitted).

Illinois courts "do not construe a contract to have a condition precedent unless there is language in the instrument that is unambiguous or the intent to create such a condition is apparent from the face of the agreement." *Berg for Wiesner v. CI Invs., Inc*., 2017 WL 1304082, at *8 (N.D. Ill. 2017) (citation omitted). "Conditions precedent may be indicated by terms such as 'on the condition,' 'subject to,' 'when,' 'as soon as,' or other similar terms." *Solaia Tech. LLC v. ArvinMeritor, Inc.*, 2006 WL 695699, at *5 (N.D. Ill. 2006) (Illinois law; internal quotation marks omitted).

JSSI relies on Section I.a.i and Section I.d.ii of the Contract to argue that a condition precedent exists. Section I.a.i of the Contract states that "Scheduled Maintenance shall be performed by an Approved Repair Facility at JSSI's expense for parts and labor, subject to a purchase order issued by JSSI on the Clients behalf, *and* subject to the Client's Pro Rata share described on Exhibit C." Exhibit C consists of a table specifying the parts covered, their description, serial number, and the parties' Pro Rata Share for the cost of each part. Section I.d.ii provides JSSI with the discretion to require that LAC pay an amount up to its full Pro Rata Share in advance of a scheduled maintenance. Based on this language, JSSI contends that the MPI was subject to two conditions precedent: (i) an issuance of a purchase order, and (ii) payment of LAC's Pro Rata Share.

LAC disputes that the Contract established such a condition precedent, arguing that Section I.a.i merely specified that scheduled maintenance was to be performed at JSSI's cost except for the Client's Pro Rata Share as described in Exhibit C. We agree in part.

As we read Section I.a.i with Exhibit C, we find unfounded JSSI's contention that the third clause of the sentence creates a condition precedent requiring LAC to pay its Pro Rata Share before an MPI is authorized and scheduled. Exhibit C describes the parties' respective share of the cost for each item. It does not contain any language about the timing of payments, let alone unambiguous language requiring that payment be made before maintenance is performed. As LAC contends, this language merely suggests that JSSI's expenses for the parts and labor are limited to the portions specified in Exhibit C. If any condition does exist in this provision, it merely requires that a purchase order be issued for any parts and labor to be covered by JSSI. As such, we do not find that JSSI's performance was subject to an advance payment requirement under Section I.a.i.

However, the same cannot be said for Section I.d.ii. This section expressly creates a discretionary condition precedent requiring advance payment of an amount up to LAC's Pro Rata Share of the MPI. It states:

> In connection with any maintenance hereunder that requires the Client to pay a Pro Rata share, JSSI may, in its sole discretion, require the Client to make a payment or payments in advance, in an amount reasonably estimated by JSSI to be equal to the Client's Pro Rata share.

20

Dkt. # 48-1 at 171. A plain reading of this provision suggests JSSI may require that a payment be made before any maintenance where LAC must pay a Pro Rata Share. It is undisputed that the MPI falls within this maintenance category. Therefore, the Court finds that the Contract gives JSSI discretion to trigger a condition precedent to its performance.

It is undisputed that JSSI triggered this condition on June 12 when it informed LAC that its Pro Rata Share must be paid upfront. Accordingly, we next assess whether JSSI waived this condition when it agreed that LAC pay half its Pro Rata Share in advance.

### (ii) Whether JSSI Waived the Condition Precedent

Under Illinois law, a condition precedent may be waived "either expressly or by conduct indicating that strict compliance with the condition[] is not required." *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 633 (7th Cir. 1992). LAC alleges that on June 19, 2017, JSSI agreed that LAC can pay only half of its Pro Rata Share in advance, with the other half due upon the MPI's completion. JSSI concedes that the parties reached this agreement but alleges that it was not made until after LAC paid the first invoice on July 24, 2017. Notwithstanding this dispute, JSSI argues this arrangement did not waive the condition precedent because it still required that LAC pay half its Pro Rata Share upfront. The Court agrees.

As noted, Section I.d.ii gives JSSI the discretion to require a payment in advance of a scheduled maintenance. The provision also specifies that the payment may be up

to an amount "reasonably estimated by JSSI to be equal to the Client's Pro Rata Share." The Contract therefore allows JSSI to adjust the exact amount to be paid in advance. Because the express terms of the condition allow it, such an adjustment cannot be construed to indicate that strict compliance with the condition was no longer required. Simply put, as long as JSSI did not eliminate the advance payment requirement in its entirety, the Court cannot find that an adjustment in the payment's amount qualifies as a waiver of the condition.

Having found that JSSI did not waive the condition, we next evaluate whether LAC failed to meet the condition precedent.

### (iii)    Whether LAC Failed to Meet the Condition Precedent

JSSI argues that LAC failed to meet the condition precedent before the Contract expired. LAC responds that it did not fail because it paid the first half of its Pro Rata Share on July 24, 2017, and no provision required it to make an advance payment before the Contract expired. The Court agrees with LAC that it did not fail to meet the condition precedent.

As noted previously, the parties agreed to have the Renewal Contract go into effect on the date that the original Contract expired. Because the latter Contract relates back to the former, the two documents create a seamless contractual relationship between the parties. Therefore, the fact that LAC did not make the advance payment until after the original Contract expired is of no consequence. The Renewal Contract, in essence, operates as an extension of the former, and the parties' obligations under the

former carry forward to the latter.  Therefore, once LAC met the advance payment requirement, JSSI's obligation to perform the MPI was triggered.  Accordingly, the Court cannot grant JSSI summary judgment on this basis.

### 2.  Breach of Contract: Good Faith and Fair Dealing

The doctrine of good faith and fair dealing comes into play when a party abuses discretion afforded to it under a contract's terms by acting "'arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties.'"  *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 462 (7th Cir. 2014) (quoting *N. Tr. Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995)).  It "prevent[s] one party from depriving another of the right to receive the benefit of the contract in a way the parties could not have contemplated at the time of drafting." *RBS Citizens, N.A. v. Sanyou Import, Inc.*, 525 Fed. Appx. 495, 499 (7th Cir. 2013).

"To state a claim for breach of the implied covenant of good faith and fair dealing in Illinois, a plaintiff must plausibly allege (1) the existence of an enforceable contract (2) [a] breaching of a specific duty imposed by the contract *other than the covenant of good faith and fair dealing*; (3) that defendant failed to exercise its contractual discretion reasonably and with [im]proper motive; and (4) resultant damages." *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 768 (N.D. Ill. 2019) (emphasis added) (quoting *AAA Gaming LLC v. Midwest Elecs. Gaming, LLC*, 2016 WL 6476549, at *3 (N.D. Ill. 2016)); *see also McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013) (explaining that "[t]he obligation of good faith

and fair dealing is used as an aid in construing a contract under Illinois law, but does not create an independent cause of action" or "permit a party to enforce an obligation not present in the contract"); *Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 995 (N.D. Ill. 2019) (same).

LAC alleges three ways in which JSSI failed to perform the MPI in bad faith. First, JSSI failed to schedule an appointment and authorize the MPI for over four months after LAC requested the service. Second, when JSSI finally scheduled an MPI it failed to issue a purchase order for the MPI for an additional three months, citing a host of allegedly pretextual reasons. Third, and finally, even when LAC made an advance payment on the MPI, as required under the Contract, JSSI refused to authorize the MPI and issue purchase orders until after LAC paid its Pro Rata share in full, claiming that no coverage could be afforded under the Contract because it expired.

As a preliminary matter, the Court rejects JSSI's contention that the implied covenant cannot be used to interpret the Contract. JSSI rests its argument on the contention that the Contract is not ambiguous. But this argument mischaracterizes the state of the law. LAC need only show that the Contract vested JSSI with discretion in performing an obligation under the contract and that JSSI exercised its discretion "in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." *LaSalle Bank Nat'l Assoc. v. Paramont Props.*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008); *see also Gore v. Ind. Ins. Co.*, 876 N.E.2d 156, 161 (Ill. App. Ct. 2007) (explaining that the purpose of the duty is "to ensure that parties do not take advantage

of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract").

JSSI next argues that LAC failed to establish that the Contract does not provide it with any discretion in performing its contractual obligations as to the MPI, and in the alternative, that LAC has failed to produce evidence showing that JSSI exercised its discretion in bad faith. The Court addresses each argument in turn.

### (i) Whether the Contract vests JSSI with Discretion in Performing its Contractual Obligations

JSSI argues that it has no discretion as to scheduling the MPI or issuing purchase orders because its obligations are constricted by a condition precedent in Section I.a.i. But we find no such condition in Section I.a.i. Even with a condition precedent in Section I.d.ii, the Court has found that the Contract vests JSSI with discretion in both triggering the condition and determining the exact amount to be paid in advance. What is more, the Contract remains silent as to when exactly an MPI must be scheduled and a purchase order issued once the condition precedent is met.

Accordingly, the Court finds that the Contract provides JSSI with substantial discretion in scheduling and issuing authorization for any scheduled maintenance. We now turn to whether JSSI acted in bad faith.

### (ii) Whether JSSI Exercised its Discretion in Bad Faith

As a preliminary matter, whether a defendant acted in bad faith is a question of fact that cannot be resolved on summary judgment. *Mathis v. John*

*Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). Nevertheless, JSSI contends that the undisputed facts show it did not act in bad faith. The Court disagrees. The parties dispute nearly every single material fact that underlies this claim.

First, LAC alleges that JSSI acted in bad faith when it failed to schedule the MPI for four months after LAC requested service. LAC claims that between March and June 2017, it coordinated with JSSI the delivery of the Aircraft for the MPI service. JSSI disputes this allegation, claiming that LAC did not communicate with JSSI regarding the MPI from approximately February 25, 2017, until June 12, 2017. Dkt. #67 at ¶ 10. Thus, summary judgment is improper because there is a genuine issue of material fact as to who bears the responsibility for the delay in scheduling the MPI.[2]

Second, LAC alleges that JSSI acted in bad faith when it failed to issue a purchase order for the MPI until after the Contract expired. JSSI argues that it had no discretion to issue a purchase order because the Contract required it to issue one after LAC met the condition precedent. LAC disputes that the Contract has such a requirement, arguing that the Contract does not clearly specify the timing upon which the MPI must be issued.

The Court has rejected JSSI's position that Section I.a.ii conditions issuance of

---

[2] JSSI also argues that it did not act in bad faith once LAC delivered the Aircraft to DAI because at that point the Contract only required it to issue invoices for the MPI. But the Contract expressly states that the MPI is subject to purchase orders by JSSI. Accordingly, JSSI's role was not limited to issuing invoices but also issuing purchase orders for the parts necessary for the MPI. JSSI attempts to refute this position, arguing that under Section I.a.ii of the Contract, the issuance of purchase orders was subject to LAC paying its Pro Rata Share as prescribed under Exhibit C. The Court already rejected this position. We found that the condition precedent existed with respect to an advance payment in Section I.d.ii, but that condition has nothing to do with the issuance of purchase orders.

purchase orders upon payment of the Pro Rata share, and has found that a condition precedent only existed in Section I.d.ii, which does not mention purchase orders let alone clarify when JSSI must issue them. Furthermore, the Court has found that the Contract provides JSSI with substantial discretion as to the scheduling of the MPI. Accordingly, summary judgment on this basis is improper.

Third, and finally, LAC alleges that JSSI acted in bad faith by (1) failing to provide a quote for the MPI until after the Contract expired while knowing that LAC wanted to review the quote before making an advance payment, (2) refusing to issue the purchase orders once LAC made the advance payment on July 24, 2017, and (3) continuing to insist that LAC must pay the full Pro Rata share and sign the Renewal Contract before the MPI can be performed.

As to the conduct in the first allegation, LAC argues that this was bad faith because the delay in providing the requested quote precluded LAC from timely making its advance payment, which JSSI claimed was a breach that excused its obligations under the Contract. *See Charter Oak Fire Ins. Co. v. Color Converting Indus. Co.*, 45 F.3d 1170, 1176 (7th Cir. 1995) (holding that a party to a contract who without justification prevents the other party from complying with its terms cannot use that breach to get out of his obligations). But JSSI disputes that LAC requested a quote before the Contract expired. The date that the quote was requested is a material fact, and the parties dispute on this issue precludes summary judgment here.

As to the remaining two allegations, JSSI argues that it was within its rights to

27

refuse to issue the MPI when LAC made the advance payment because the Contract had expired and LAC had not signed the Renewal Contract. But this is unconvincing.

In the same breath that JSSI makes this argument, it counterclaims against LAC for breach of the Renewal Contract which it alleges was in effect as of June 25, 2017. JSSI cannot maintain two inconsistent positions on whether a contract existed when LAC made its advance payment; either the Renewal Contract went into effect in June which invalidates JSSI's contention that it was within its rights to refuse to perform the MPI when LAC made its payment on July 24, 2017, or the Renewal Contract did not go into effect until September which defeats its counter claim for breach of the Renewal Contract. *Finley v. Kesling*, 105 Ill. App. 3d 1, 9 (1st Dist. 1982) (party not permitted to maintain inconsistent positions in judicial proceedings). These inconsistent positions indicate a genuine dispute of material fact. Therefore, the Court is precluded from entering summary judgment on this basis.

### 3. Damages

As noted in Section I, LAC also seeks to hold JSSI liable for the costs of repairing the Aircraft's fuel system. LAC argues that JSSI is responsible for these costs because the damages occurred while the Aircraft was under JSSI's control awaiting an MPI that JSSI delayed. JSSI argues that these damages resulted from LAC abusing the Aircraft by failing to run the Engines for three months. Alternatively, JSSI contends that the Contract excludes LAC from recovering these damages because they are consequential in nature.

28

As relevant here, Section I.i of the Contract absolves JSSI of responsibility to "remedy or repair any loss or damage in any way attributable to Abuse of the Aircraft or Engines" and "remedy or repair any loss or damage incurred while the Engines are under the Control of the Approved Repair Facility." Dkt. # 48-1 at 173. "Abuse" is defined as a party's failure to maintain the aircraft in accordance with the requirements of the Original Equipment Manufacturer. Dkt. # 48-1 at 187. Section I.l.iv of Contract also states that:

> IN NO EVENT SHALL JSSI BE LIABLE TO THE CLIENT FOR ANY LOST PROFITS OR SAVINGS, LOST BUSINESS, LOSS OF DATA, LOSS OF REVENUE, LOSS OF USE OR MONEY, LOSS OF BUSINESS, LOSS OF OPPORTUNITY OR ANY INCIDENTAL, SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES (WHETHER OR NOT ALSO CONSTITUTING ONE OF THE FOREGOING SPECIFIC TYPES OF LOSS) IN ANY WAY RELATING TO THE PERFORMANCE OF ANY REPAIR AND MAINTENANCE WORK BY AN APPROVED REPAIR FACILITY OR ANY FAILURE OF JSSI TO PERFORM ITS OBLIGATIONS UNDER THIS CONTRACT.

Dkt. # 48-1 at 174.

LAC argues that the undisputed facts show the damage to the fuel system resulted while the Aircraft was in DAI's possession. Therefore, it could not have abused the Aircraft because the Aircraft was not in its control. LAC further argues that the Aircraft was effectively under JSSI's control while in DAI's possession. For support, LAC relies on evidence showing that JSSI ordered DAI "not to touch" the Engines until JSSI issued purchase orders authorizing the MPI. And when LAC attempted to run the Engines while the Aircraft was at DAI, DAI refused to allow it to do so without JSSI's

authorization.

JSSI contends that its "do not touch" order was limited to anything in connection with the anticipated MPI, and that it did not tell DAI or LAC that they could not start the Engines. Accordingly, the parties dispute the material facts underlying the questions of "control" and "abuse," which precludes the Court from entering summary judgment on this basis.

Turning to the issue of consequential damages, whether damages are direct or consequential turns on the degree to which they are a foreseeable consequence of breach. *Willmott v. Fed. St. Advisors, Inc.*, 2006 WL 3743716, at *6 (N.D. Ill. 2006). JSSI argues that the alleged breach is its failure to pay for the MPI and that direct damages from that breach would only encompass JSSI's portion of the MPI. The Court disagrees.

In addition to JSSI's failure to pay for the MPI, LAC has also alleged that a breach occurred when JSSI continuously delayed scheduling the MPI and refused to issue purchase orders. The Court has already found that there is a genuine dispute of material fact as to whether JSSI or LAC bear responsibility for delaying the MPI. Accordingly, whether the damages to the fuel system are consequential in nature requires a factual determination that is improper at summary judgment.

### C. JSSI's Breach of Contract Counterclaim

JSSI alleges that LAC breached the Renewal Contract by failing to make monthly payments under the Renewal Contract. LAC responds that it was not obligated

to make those payments because the Renewal Contract was not signed until September.

We reject LAC's argument as the Court has already found that the Renewal Contract went into effect on June 26, 2017. Nevertheless, summary judgment on JSSI's counterclaim is inappropriate because, as our discussion of LAC's claim demonstrates, there are material factual disputes as to whether JSSI can prove that it fully performed its obligations under the Contract. For example, the parties dispute whether JSSI's failure to timely schedule and authorize the MPI and refusal to provide coverage for the MPI after LAC made an advance payment qualify as breaches. If they do, then JSSI cannot establish a crucial element of its counterclaim, *i.e.* it fully performed its obligations under the Contract.

Furthermore, the parties dispute the proper amount of damages that JSSI would be entitled if it succeeded on its counterclaim. JSSI seeks $55,945.86 in damages, representing the management fees JSSI would have received if LAC performed the Renewal Contract throughout its term, rather than breaching it. JSSI alleges that the management fees comprise two categories: (1) 15% of each remaining monthly payment LAC would have made over the life of the Renewal Contract ($40,112.18); and (2) the portion of the LAC's annual minimum service charge attributable to management fees ($15,833.68).

LAC disputes that the Renewal Contract specified that JSSI would earn 15% of payments in "management fees," disputes that the Renewal Contract authorized JSSI to collect these fees, and disputes that JSSI was entitled to management fees on annual

payments under the Renewal Contract. LAC argues that the payment obligations in Section II and Exhibit B to the Renewal Contract do not mention a "management fee," and that the phrase is defined in Exhibit A to mean "a percentage of the Client's monthly payments to JSSI" without defining the exact percentage. LAC further argues that the Renewal Contract's termination provision discharges the parties from any future performance and therefore precludes JSSI from recovering the damages it is seeking because they qualify as future performance.

JSSI responds that these fees are not future performance, they are simply the amount that would put it "in the same position at the time of judgment as it would have been had the Renewal Contract been performed." JSSI further argues that it did not have to inform LAC in advance what portion of its monthly payments would be allocated as management fees.

"The proper measure of damages in a breach of contract action [] is one that places the injured party in the same position at the time of judgment as he would have been had the contract been performed." *Nilsson v. NBD Bank of Ill.*, 313 Ill. App. 3d 751, 760 (1st Dist. 1999). JSSI does not point to any contractual provision entitling it to 15% of the monthly payments as management fees. As such, the Court cannot discern why JSSI contends that this specific percentage is attributable to management fees that it now claims as damages.

Given this multitude of material factual disputes, the Court cannot grant summary judgment on JSSI's counterclaim.

## <u>CONCLUSION</u>

For the reasons mentioned above, the Court denies JSSI's motion for summary judgment in its entirety.  It is so ordered.

Dated:  04/24/2020

_____
Charles P. Kocoras
United States District Judge